### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF OKLAHOMA

PHYLLIS MACK,

      **Plaintiff,**

v.

      **Case No. 23-CV-00246-SEH-JFJ**

SCHINDLER ELEVATOR
CORPORATION,

      **Defendant.**

### <u>OPINION AND ORDER</u>

Before the Court is Defendant Schindler Elevator Corporation's

("Schindler") motion for summary judgment. [ECF No. 37]. Plaintiff Phyllis

Mack brings a single claim of negligence against Schindler. [ECF No. 1].

Mack alleges she was injured when a mesh elevator door on a large freight

elevator closed upon her. [*Id.* at ¶ 4]. She further alleges that

Schindler "negligently manufactured and/or maintained" the elevator and its

negligence was the direct and proximate cause of her injuries. [*Id.* at ¶ 5]. As

an alternate theory of proving her claim, Mack invokes the doctrine of *res*

*ipsa loquitur*. [*Id.* at ¶ 6].

The Court finds Schindler is entitled to summary judgment. Mack's

negligent manufacturing theory fails because Schindler did not manufacture

the elevator and tort actions relating to the elevator's installation are time-

barred. Because the undisputed facts show the elevator performed as expected, Mack cannot demonstrate Schindler breached its duty of ordinary care; therefore, her negligent maintenance theory fails. This case is also not fit for application of *res ipsa loquitur*. For these reasons, explained more fully below, Schindler's motion is granted.

## I. Background

Mack was employed by a company that provided administrative, janitorial, and cleaning services at the BOK Center in Tulsa, Oklahoma. [ECF No. 37-3 at 2–3; ECF No. 37 at 8, ¶ 2]. During her shifts, Mack routinely used a certain large freight elevator to move heavy equipment between floors. [ECF No. 37-3 at 4; ECF No. 37 at 8, ¶ 7].

On October 3, 2019, Mack entered the elevator with several other co-workers. [ECF No. 37 at 8, ¶ 3]. After she had been on the elevator for over 25 seconds, Mack decided to exit. [*Id.*; ECF No. 37-2 at 2]. Unfortunately, when she was about two steps from the elevator's opening, the vertical mesh gate was closing and Mack was looking down. [ECF No. 37 at 8, ¶¶ 3, 8; ECF No. 37-2 at 2; ECF No. 37-3 at 11]. Mack did not realize the gate had closed to a height of approximately six inches above her head as she began to exit. [ECF No. 37-3 at 11; ECF No. 37-2 at 2]. The bottom rubber part of the gate hit Mack as she exited. [ECF No. 37-2 at 2; ECF No. 37-3 at 12–13]. She continued her course out of the elevator and walked away. [ECF 37-3 at 13].

2

After she was hit, the door reversed course and went back up before coming down again and closing. [ECF No. 37-2 at 2; ECF No. 37-3 at 13].

The elevator's door system consists of a vertical mesh gate and "vertical bi-parting hoistway doors." [ECF No. 37-2 at 2; ECF No. 37 at ¶ 3; ECF No. 37-3 at 11]. It also features a "reopening device," which is "an infrared light curtain attached immediately adjacent to the gate track." [ECF No. 37-2 at 2]. If the reopening device is triggered, the gate will reverse course and reopen. [ECF No. 37-3 at 9–10].

Global Tardif manufactured the elevator and Peelle manufactured the door system. [ECF No. 37-1 at ¶ 4; ECF No. 37-2 at 2]. In 2007, Schindler installed the elevator at the BOK Center. [*Id.*].

Schindler contracted for the maintenance of the elevator with the management company for the BOK Center. [ECF No. 37-1, ¶ 5]. Pursuant to the terms and conditions of the contract, Schindler technicians performed maintenance and safety testing. [*Id.* at ¶ 6]. Schindler technicians were also available for minor emergency calls, pursuant to the contract's terms. [*Id.* at ¶ 7]. Before the elevator door hit Mack, Schindler was unaware of any alleged malfunction of the elevator's gate and was not on notice of any substantial risk of injury or danger the elevator posed. [*Id.* at ¶ 8].

3

Mack sued Schindler, asserting a claim of negligence.[1] [ECF No. 1]. She alleges she was injured because Schindler negligently manufactured and negligently maintained the elevator. [*Id.* at ¶ 4]. She further maintains that Schindler is responsible for her injuries under the doctrine of *res ipsa loquitor*. [*Id.* at ¶ 6].

Schindler moves for summary judgment on Mack's claim. [ECF No. 37]. In support, Schindler attaches to its motion:

- an affidavit from its Branch Manager, Brandon Schutz [ECF No. 37-1];

- an expert report from John Donnelly, a professional engineer and elevator inspector [ECF No. 37-2];

- excerpts from Mack's deposition testimony [ECF No. 37-3]; and

- surveillance video of the incident [ECF No. 37-4].

Schindler also submits statements of undisputed facts, which the Court summarizes below:

1. At all relevant times, Schindler had an elevator maintenance contract with the Tulsa Convention Center ("BOK Events Center") that contained defined provisions related to preventive maintenance services for certain elevators and escalators.

---

[1] Mack filed her complaint outside Oklahoma's 2-year statute of limitations period. *See* 12 O.S. § 95. However, the face of the complaint shows that this case is a refiling of case No. 4:21-cv-00425-CVE-SH, pursuant to 12 O.S. § 100, Oklahoma's savings statute. [ECF No 1 at ¶ 1]. Thus, Schindler did not raise the statute of limitations as an affirmative defense.

2. On October 3, 2019, Mack worked for a company called SMG, which provided certain administrative, janitorial and cleaning services at the BOK Events Center.

3. On that date, after Mack entered a large freight elevator at the BOK Events Center with various co-workers, she decided to exit the elevator just as a mesh gate was closing; her head collided with the gate as it was descending.

4. Following the incident, Schindler reviewed the facts and allegations of this matter and determined that the elevator did not malfunction.

5. The elevator door system worked as designed and met all applicable codes and standards at the time of the incident.

6. Mack was aware that the gate could close without pushing a button and was aware of the gate reopening sensor.

7. Mack was aware of how the elevator operated as she used the elevator multiple times on each shift; she had worked at this location for nearly five (5) years at the time of the accident.

8. Mack's injuries were caused by her failure to exercise due care as she was exiting the elevator while the gate was in the process of closing.

9. There was nothing Schindler could have or should have done to prevent his incident.

10. Schindler had no notice that the elevator posed any substantial risk of injury or danger related to the descending mesh door on the freight elevator.

11. At the time of this incident, Schindler was unaware of any previous similar incidents involving the descending mesh door on the freight elevator.

12. Schindler technicians performed routine maintenance and safety testing for this elevator pursuant to the terms and conditions of the

5

contract with the Tulsa BOK Events Center and was always available [i.e., 24 hours] for minor emergency calls.

13. Schindler did not manufacture the freight elevator at issue in this matter; rather, the elevator was manufactured by Global Tardif and fully installed in 2007 in the Tulsa BOK Events Center.

14. Mack has not provided Schindler with Initial Disclosures; did not identify an expert witness; and did not submit a witness or exhibit list pursuant to the Court's Amended Scheduling Order.

[ECF No. 37 at 7–9].

Mack has not responded to Schindler's motion for summary judgment. "If a party fails to ... properly address another party's assertion of fact ..., the court may ... consider the fact undisputed for the purposes of the motion." Fed. R. Civ. P. 56(e)(2). Pursuant to this Court's local civil rules, "[a]ll material facts set forth in the statement of the material facts of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of material facts of the opposing party …." LCvR56-1(c). Accordingly, the Court deems these facts admitted for purposes of Schindler's motion for summary judgment. *Mills v. Amazon.com Services, LLC*, No. 24-CV-0188, 2025 WL 861381, at *1 (N.D. Okla. Mar. 19, 2025) (collecting cases finding the same).

## II. Standard

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(a). "By its very terms, [the Rule 56] standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). A dispute is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material when it "might affect the outcome of the suit under the governing law." *Id.* at 248.

In applying the summary judgment standard, a court must view facts in the light most favorable to the non-moving party. *Forth v. Laramie Cnty. Sch. Dist. No. 1*, 85 F.4th 1044, 1059 (10th Cir. 2023). However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). The Court's role at the summary judgment stage is not to weigh the evidence or resolve any disputed issues in favor of the moving party. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014). Rather, a court determines "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson* 477 U.S. at 251–52. The non-movant's evidence

is taken as true, and all justifiable and reasonable inferences are to be drawn in the non-movant's favor. *Id.* at 255.

The moving party has the initial burden of showing that no genuine dispute of material fact exists. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670–71 (10th Cir. 1998). The movant "need not negate the non-movant's claim, but need only point to an absence of evidence to support the non-movant's claim." *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (citation and internal quotation marks omitted). If the movant carries its initial burden, "the burden shifts to the nonmovant to ... set forth specific facts ... from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671 (citations and internal quotation marks omitted). The nonmovant must set forth facts "by reference to affidavits, deposition transcripts, or specific exhibits ...." *Id.* (citing *Thomas v. Wichita Coca–Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir. 1992), cert. denied, 506 U.S. 1013 (1992)). "In response to a motion for summary judgment, a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial." *Am. Soc'y of Home Inspectors, Inc. v. Int'l Ass'n of Certified Home Inspectors*,

36 F.4th 1238, 1244 (10th Cir. 2022) (quoting *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988)).

## III. Discussion

### A. Negligent Manufacturing

   1. *Schindler did not manufacture the elevator that Mack alleges was negligently manufactured.*

Schindler argues that it is entitled to summary judgment on Mack's negligent manufacturing claim. [ECF No. 37 at 11]. "When, as here, a federal court is exercising diversity jurisdiction, it must apply the substantive law of the forum state." *Dyno Nobel v. Steadfast Ins. Co.*, 85 F.4th 1018, 1025 (10th Cir. 2023) (quotation and brackets omitted). "Under Oklahoma law, the three essential elements of a claim of negligence are: '(1) a duty owed by the defendant to protect the plaintiff from injury; (2) a failure to properly perform that duty; and (3) the plaintiff's injury being proximately caused by the defendant's breach.'" *Gaines-Tabb v. ICI Explosives, USA, Inc.*, 160 F.3d 613, 620 (10th Cir. 1998) (quoting *Lockhart v. Loosen*, 943 P.2d 1074, 1079 (Okla. 1997)).

The threshold question of "whether the defendant owed a duty to the plaintiff … is a question of law for the court." *Freeland v. Ameristep, Inc.*, No. 13-cv-08, 2014 WL 1646948, at \*6 (E.D. Okla. Apr. 24, 2014) (citing *Wofford v. E. State. Hosp.*, 795 P.2d 516, 518 (Okla. 1990)). "It is fundamental that

9

every person or entity must use ordinary care to avoid a foreseeable risk of injury to other persons." *Id.* (citing *Iglehart v. Bd. of Cty. Comm'rs of Rogers Cty.*, 60 P.3d 497, 502–03 (Okla. 2002)). Therefore, the "most important consideration … is the foreseeability of harm to the plaintiff." *Id.* (citing *Lowery v. Echostar Satellite Corp.*, 160 P.3d 959, 964 (Okla. 2007)). But the contours of the duty "depend on the relationship of the parties and the facts and circumstances of a particular case." *Id.* (citing *Wofford*, 795 P.2d at 519).

Here, Schindler did not manufacture the elevator that Mack alleges injured her. [ECF No. 37 at 9, ¶ 13; ECF No. 37-1 at ¶ 4]. Therefore, Schindler did not owe Mack a duty to exercise ordinary care in the design and manufacture of the elevator to protect her from foreseeable risks of harm. Even if Schindler had manufactured the elevator, there is no evidence in the record establishing a defect in its design or manufacture. *See Freeland*, No. 13-cv-08, 2014 WL 1646948, at *7 ("Although the Court regards Plaintiffs' products liability and negligent design claims as distinct claims for relief, both claims fail if Plaintiffs fail to establish a defect."). Because Schindler did not manufacture the elevator, Mack cannot present evidence sufficient to allow a jury to conclude that Schindler owed her a duty to manufacture the elevator in a way to protect her from foreseeable risks of harm. And no evidence points to any defect in the elevator's manufacture that would demonstrate Schindler breached its duty of ordinary care. Therefore,

Schindler is entitled to summary judgment on Mack's negligent manufacturing claim.

    2. *Tort actions relating to the elevator's installation are time-barred.*

To the extent Mack's negligent manufacturing claim relates to Schindler's installation of the elevator, Schindler argues this claim is barred by Oklahoma's statute of repose, 12 O.S. § 109. [ECF No. 37 at 11]. The statute provides:

> No action in tort to recover damages
>
> (i) for any deficiency in the design, planning, supervision or observation of construction or construction of an improvement to real property,
>
> (ii) for injury to property, real or personal, arising out of any such deficiency, or
>
> (iii) for injury to the person or for wrongful death arising out of any such deficiency,
>
> shall be brought against any person owning, leasing, or in possession of such an improvement or performing or furnishing the design, planning, supervision or observation of construction or construction of such an improvement more than ten (10) years after substantial completion of such an improvement.

12 O.S. § 109.

Negligence claims arising from elevator installation are subject to the statute. *Mooney v. YMCA of Greater Tulsa, Tulsa Cty.*, 849 P.2d 414, 416 (Okla. 1993) (barring a claim for negligent installation of an elevator brought more than 10 years after the elevator was installed). Schindler installed the

11

elevator approximately 16 years before this action commenced. [ECF No. 37-1, ¶ 4]. Therefore, construing Mack's negligent manufacturing claim as asserting negligent installation, the Court finds this claim barred by 12 O.S. § 109.

### B. Negligent Maintenance

Schindler further argues that it is entitled to summary judgment on Mack's negligent maintenance claim. [ECF No. 37 at 12–17]. Schindler contends that the undisputed facts show that it did not breach any duty to exercise ordinary care in the elevator's maintenance and service, and that Mack cannot show any alleged improper maintenance or service caused her injuries. [ECF No. 37 at 15–17]. As discussed above, the material elements of Oklahoma negligence are: "(1) a duty owed by the defendant to protect the plaintiff from injury; (2) a failure to perform that duty; and (3) injuries to the plaintiff which are proximately caused by the defendant's failure to exercise the duty of care." *Marshall v. City of Tulsa*, 558 P.3d 1220, 1228 (Okla. 2024) (citation omitted). As an elevator maintenance company, Schindler's duty was to "exercise ordinary care, commensurate with the danger, to inspect, repair, and maintain the elevator in a safe operating condition." *Seay v. General Elevator Co.*, 522 P.2d 1022, 1028–29 (Okla. 1974). Schindler could be held liable for injuries to parties other than those with whom it contracted, but liability was "limited to the scope of the undertaking" under the

maintenance contract and did not extend to "injury caused by a defect or other matter outside that scope." *Abernathy v. Otis Elevator Corp.*, 533 P.2d 971, 975 (Okla. 1975) (quoting 26 Am. Jur. 2d Elevators and Escalators § 17). Therefore, whether Schindler performed its contract to maintain the elevator is a question of fact. *Id.*

Schindler does not provide the Court with a copy of its maintenance contract. However, the undisputed facts demonstrate that Schindler performed routine maintenance and safety testing for the elevator according to its contract, and that at the time of the incident, the elevator door worked as designed. [ECF No. 37 at 8–9, ¶¶ 5, 12; ECF No. 37-1 at ¶¶ 5–7, 12; ECF No. 37-2 at 2]. Mack does not offer any evidence to rebut these facts, and the record reflects none. Therefore, the Court finds no genuine issue of material fact exists related to Schindler's duty to exercise ordinary care to inspect, repair, and maintain the elevator in a safe operating condition. *See Cordes v. Otis Elevator Company*, No.CIV-16-255, 2017 WL 782924, at *2 (W.D. Okla. Feb. 28, 2017) (granting summary judgment to elevator maintenance company when the evidence showed routine maintenance meeting contractual requirements and "the custom and practice of the industry.").

That Schindler did not breach its duty to Mack is further supported by the report of its expert and Mack's own testimony. The expert report notes that the mesh gate descended at a normal speed, according to the elevator code.

[ECF No. 37-2 at 2]. It further provides that the gate hit Mack as she "crossed the zone of detention" and then reversed course, working as designed. [*Id*.]. Mack testified that the elevator door was "supposed to go back up" if something was in the way of it closing and acknowledged that the door "[w]orked exactly the way [it was] supposed to" when her co-workers entered the elevator moments before she decided to exit. [ECF No. 37-3 at 9]. She admitted the elevator door reversed course and went back up when it contacted her head. [*Id*. at 13].

The Court does not find any evidence in the record suggesting that Schindler negligently maintained the elevator. Nor does it find evidence that any such failure proximately caused an injury to Mack. Aside from Mack's testimony that the mesh door caused "a whole dent" in her head and that she "was daz[ed]" and heard "buzzing noises" after the incident, nothing in the record establishes that Mack was injured by the elevator. [ECF No. 37-3 at 13]. Mack did not submit deposition or written testimony from any physician or employee regarding the incident or submit any evidence demonstrating she was injured. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. Drawing all reasonable inferences in Mack's favor, the Court finds that Schindler is entitled to summary judgment on this claim.

## C. *Res ipsa loquitor* does not apply to this case.

Mack also invokes the doctrine of *res ipsa loquitur* to support her claim. [ECF No. 1, ¶ 6]. "*Res ipsa loquitur* is a pattern of proof which may be applied to an injury that does not occur in the usual course of everyday conduct unless a person who controls the instrumentality likely to produce injury fails to exercise due care to prevent its occurrence." *Qualls v. U.S. Elevator Corp.*, 863 P.2d 457, 460 (Okla. 1993). The purpose of the doctrine "is to aid a plaintiff in making out a prima facie case of negligence in circumstances when direct proof of why the harm happened is beyond the power or knowledge of the plaintiff." *Harder v. F.C. Clinton, Inc.*, 948 P.2d 298, 303 (Okla. 1997). "Whether a case is fit for the application of *res ipsa loquitur* presents a question of law." *Id.* at 303.

*Res ipsa loquitur* requires four foundational facts to permit an inference of negligence: (1) "an injury that does not occur in the usual course of everyday conduct;" (2) the defendant "exclusively controlled the instrumentality that caused the injury;" (3) "evidence of the true explanation for the harm's occurrence is more accessible to the defendant than to the plaintiff;" and (4) "the circumstances surrounding the harmful event are not likely to produce an injury unless the defendant fails to exercise due care to prevent its occurrence." *Jackson v. Okla. Mem. Hosp.*, 909 P.2d 765 n. 17 (Okla. 1995) (citations omitted). "Once the foundation[al] facts for *res ipsa loquitur* are

15

established, negligence may be inferred from the injurious event," and "the burden of producing evidence … is then shifted to the defendant." *Id*. at 770 (emphasis and citations omitted). But neither the mere fact that an injury occurred under unexplained circumstances nor lack of knowledge as to the cause of injury are enough to invoke the doctrine. *St. John's Hosp. & Sch. of Nursing, Inc. v. Chapman*, 434 P.2d 160, 165 (Okla. 1967), superseded by statute.[2] And an inference of a defendant's negligence is not permissible "*until the plaintiff's own conduct is eliminated as a responsible cause.*" *Hendrick v. Hardt*, 359 P.3d 203, 209 (Okla. Civ. App. 2015) (quoting Restatement (Second) of Torts, § 328(D) (comment i)) (emphasis in original). That is, "[w]here the evidence fails to show a greater probability" that the plaintiff was injured by the defendant's negligence than by the plaintiff's own conduct, "the inference of the defendant's responsibility cannot be drawn." *Id*.

Schindler argues that this case is not fit for application of *res ipsa loquitur* because Mack fails to establish any of the foundational facts that would permit an inference of negligence. [ECF No. 37 at 19–21]. The Court agrees.

---

[2] After *St. John's* was decided, the Oklahoma legislature enacted a statutory presumption of negligence for certain malpractice suits; however, "[n]o more is required by statute than by the common law *to bring* a case within the purview of *res ipsa loquitur*." *Harder*, 948 P.2d at 304–05, n. 27 (citing 76 O.S. 1991 § 21) (emphasis in original).

First, this was not an unusual or unexplained event. Mack used the elevator every shift and understood that the gate closed automatically. [ECF No. 37 at 8, ¶¶ 6–7; ECF No. 37-3 at 7, 9]. The video of the incident shows she was looking down as she exited and Mack testified that she was unaware that the gate was closing as she stepped under it. [ECF No. 37-4; ECF No 37-3 at 11]. The Court finds that an elevator door contacting a person and the door reopening upon contact is something that occurs "in the usual course of everyday conduct."

The second foundation fact requires proof that the elevator was under Schindler's exclusive control or management. "The fundamental element" of *res ipsa loquitur* "is the control of the instrumentality which caused the damage." *Qualls*, 863 P.2d at 460 (citations and internal quotation marks omitted). Therefore, "the 'exclusive control' criterion serves the function of connecting the defendant to the negligent event." *McClure v. Sunshine Furniture*, 283 P.3d 323, 331 n.10 (citation omitted).

"Exclusive control is a flexible concept which denotes no more than elimination, within reason, of all explanations for the genesis of the injurious event other than the defendant's negligence—a showing that defendant's negligence *probably* caused the accident." *Harder*, 948 P.2d at 306 (citations omitted) (emphasis in original). Exclusive control is not established where the activities of third parties having access to the instrumentality have not

been reasonably eliminated as a probable cause of the accident. *Wheeler v. Koch Gathering Sys., Inc.*, 131 F.3d 898, 904 (10th Cir. 1997) (collecting cases). "Logically, the greater interference with an instrumentality by other people or conditions outside the defendant's control, the greater probability the plaintiff's accident can be explained by other reasons than the defendant's negligence." *Id*. Whether a party was in exclusive control of an instrumentality for purposes of the *res ipsa loquitur* doctrine is typically a question for the factfinder if "the *proof is conflicting or subject to different inferences*[.]" *Harder*, 948 P.2d at 304 (emphasis in original). But "when one of the foundation[al] facts *is irrefutably negated*[,]" the determination is a question of law for the court. *Id*. (emphasis in original).

In *Seay*, the Oklahoma Supreme Court found that *res ipsa loquitur* did not apply in a case involving an injury caused by an automatic elevator door, because the defendant elevator maintenance company did not have exclusive control of the elevator. 522 P.2d at 1027. The court based its finding on the plaintiff's failure to "employ the means at hand to control the door prior to and during her exit," despite her familiarity with the "door opening qualities of the elevator in the building in which" she worked. *Id*.

Likewise, here, Mack frequently used the elevator and was familiar with how the mesh door opened and closed. [ECF No. 37 at 8, ¶¶ 6–7; ECF No. 37-3 at 4, 7–10]. She entered the elevator with multiple people on the day of the

incident and admitted that the door operated as expected with the other riders. [ECF No. 37-3 at 9–10]. She also testified that she had never seen a Schindler elevator technician working on the elevator and that "operations" from "SMG" always "set the reset button." [ECF No. 37-3 at 8]. Although Schindler technicians performed routine maintenance and safety testing for the elevator and were always available for minor emergency calls, this incident was not reported to Schindler. [ECF No. 37 at 9, ¶ 12; ECF No. 37-1 at ¶ 10]. Under these facts, the Court finds no reasonable jury could conclude Schindler was in exclusive control of the elevator at the time of the subject incident.

As to the third foundational fact, evidence of the "true cause of the injury" is not more accessible to Schindler. Mack has not shown why she "could not or did not investigate the possible cause of her injury. [Mack] did not argue that the [mesh gate] was unavailable for examination, that records regarding maintenance were not available," or that an employee of Schindler knowledgeable about the maintenance history of the elevator "was unavailable to testify." *Geschke v. Wal-Mart Stores E., L.P.*, No. 20-cv-0414, 2021 WL 1873449, at *3 (N.D. Okla. May 10, 2021). Moreover, the record shows that Mack had access to evidence that establishes the true explanation of the incident. As Schindler correctly notes, video evidence exists to aid in the inquiry. [ECF No. 37 at 19]. Additionally, Mack hired an elevator expert,

19

but that expert "was not able to give a favorable opinion with respect to the subject incident and elevator at issue." [ECF No. 26, ¶ 2]. Therefore, Mack "cannot now use the doctrine of *res ipsa loquitur* as a substitute for investigating what caused her injury." *Geschke*, 2021 WL 1873449, at *3 (citing *Harder*, 948 P.2d at 303).

Fourth, the evidence must show that getting hit in the head by the elevator's mesh gate "is the sort of occurrence which, in the ordinary course of events, would not have happened if one having control of the [elevator's mesh gate] exercised due care." *Smith v. Hines*, 261 P.3d 1129, 1136 (Okla. 2011). Whereas the first foundational fact focuses on whether Mack's injury was so unusual that it could have only occurred if *someone* was negligent, this foundational fact focuses on whether the circumstances are such that the "someone" must be Schindler. Because Mack has not established Schindler was in exclusive control of the elevator, the fourth foundational fact cannot be met.

Last, an inference of Schindler's negligence is not permissible because Mack's own conduct cannot be eliminated as a responsible cause. *See Hendrick*, 359 P.3d at 209. The undisputed facts show that Mack's injuries were caused by her failure to exercise due care as she was exiting the elevator while the gate was in the process of closing. [ECF No. 37 at 8, ¶ 8; ECF No. 37-4]. Accordingly, the doctrine of *res ipsa loquitur* does not apply.

## IV. Conclusion

Though Mack has failed to respond, the Court finds that summary judgment is appropriate given Schindler has demonstrated that no genuine issue of material fact exists as to whether it negligently manufactured or maintained the elevator. Therefore, Schindler's motion for summary judgment [ECF No. 37] is GRANTED. A separate judgment will enter.

DATED this 6th day of April, 2026.

_____
Sara E. Hill
UNITED STATES DISTRICT JUDGE